# CHARLESTON.

INTERIOR AND WEST VIRGINIA RAILROAD CO. *v.* EPLING *et al.*

Submitted March 29, 1910. Decided November 28, 1911.

1. WILLS—*Construction—Estate Conveyed.*

A testator devised: "my real & personal property is to be equally divided between my three daughters (naming them) and then to their children forever." At testator's death all the daughters were living; two of them had children; the other one, though married, had then no children and never produced issue. After testator's death, mutual deeds in partition of the land were made by the two daughters then living and the children of the other daughter then deceased. HELD:

I. The daughters took life estates with remainders in fee to their respective children, in their respective shares allotted in equal division of the land. (pp. 8, 9).

2. SAME—*Construction—Vested and Contingent Remainders.*

II. As to the share of the daughter having no children at testator's death, the remainder was a contingent one—with possibility of vesting during her life on production of issue. (p. 9).

3. DESCENT AND DISTRIBUTION—*Contingent Remainders—Failure.*
 III. At the death of this daughter without issue, the contingent remainder failed; and, there being no residuary clause in the will, the partitioned share of the land to which that remainder pertained descended to the heirs-at-law of the testator. (p. 10).

4. PARTITION—*By Parties—Effect—Estoppel.*
 IV. The children of the deceased daughter were not estopped by their deed in partition from claiming an interest as heirs-at-law of the testator, in the partitioned share as to which the contingent remainder failed. (p. 11).

Error to Circuit Court, Monroe County.

Condemnation proceedings by the Interior & West Virginia Railroad Company against W. A. Epling and others. From the order, defendant W. A. Epling brings error, and the other defendants file cross-assignments of error.

*Cross-assignments sustained, and order reversed.*

*Rowan & Meadows,* for plaintiff in error.

*R. L. Clark,* for defendants in error Pence.

*J. H. Crosier,* for defendants in error Williams' Heirs.

ROBINSON, JUDGE:

The controversy grows out of the condemnation of a parcel of land for railroad right of way. No question, however, arises as to the direct condemnation proceedings. It is conceded that the land has been regularly taken and the money therefor paid into court. The question now submitted is: Who is entitled to the money paid for the land taken?

The answer to the question turns on a construction of the will of Andrew D. Crosier, made in 1878, and probated in 1886. He devised all his property to his wife for her natural life, and then further devised: "After the death of me and my wife my real & personal property is to be equally divided between my three daughters, Susan H. Matics, Paulina Williams & Mary J. Pence and then to their children forever." At the time the will was made, and at the death of the testator, each of the daughters was married and the two that are last named had children. The oldest, Susan H. Matics, never had issue.

After the death of the widow, an equal partition of the land

devised was made in pursuance of the will. Paulina Williams was then deceased, having left adult children. Later, deeds were executed by the two living daughters and the children of the deceased daughter, conveying the parcels as laid off in the partition. One parcel was conveyed to Susan H. Matics by Mary J. Pence and the children of Paulina Williams; another parcel was conveyed to Mary J. Pence by Susan H. Matics and the Williams children; and the remaining parcel was conveyed to the Williams children by the other two parties. These deeds were made in May, 1897. Each of the deeds erroneously recites that the land was devised by Andrew D. Crosier to his wife for life with remainder in fee simple to the daughters as joint tenants. In 1898, Susan H. Matics and husband conveyed to William Epling, the plaintiff in error, the parcel allotted to her by this partition. That parcel is the one from which has arisen the money now in contest. Before the condemnation proceedings were begun Susan H. Matics was deceased, and Mary J. Pence had departed this life, leaving children.

The condemnation proceedings evidently brought to the attention of the Williams and Pence children the claim which they now make. They claim that the three daughters by the terms of the will took only life estates. These children insist that they own the parcel of land which Susan H. Matics purported to convey to Epling. The circuit court held that the Williams and Pence children were entitled to this portion of the land after the death of Susan H. Matics. But the court seems also to have held that the Williams children were estopped by their deed in partition, and that, therefore, Epling had their interest in the land. An order was made giving to Epling, in the right of the Williams children, four-sevenths of the money, and to the Pence children three-sevenths thereof. Epling, insisting that he is entitled in fee simple to the land conveyed him by Susan H. Matics, has prosecuted this writ of error.

By the plain import of the will, Epling must be denied any interest in the land. Susan H. Matics had only a life estate to convey to him and that life estate has now terminated. The will speaks for itself. We must give it the effect which the words used demand. The intention of the testator must be drawn from these words. There is no apparent ambiguity in the will to need clearing by resort to extrinsic evidence. The sit-

uation and surroundings of the testator as disclosed by the record do not tend to establish a meaning other than that disclosed by the words of the will.

Nothing in the will indicates that the word "children" is used in a sense other than that which usually belongs to it. Nothing indicates that it is used as a word of limitation, in the sense of "heirs." It is ordinarily a word of purchase. The ordinary significance of the word is not changed by anything appearing in this case. 13 Enc. Dig. Va. & W. Va. 810.

The will gave to each daughter a life estate in the parcel that should fall to her in the equal division which the testator directed should be made among them. As to the parcel so allotted each daughter for life, her children were to take in remainder. What other import can reasonably be given the words "to be equally divided between my three daughters * * * * and then to their children forever?" After an estate in each daughter ended, the land in which she enjoyed that estate was *then* to go to her children. The children of the daughters were *then* to take the parcels of their mothers, respectively. When the equal division of the land to the daughters had served them for their lives, *then* that division was to serve their children *forever,* or in fee. Clearly, remainders in the children are devised by the will. And clearly, those remainders reasonably refer to the parcels of land as allotted to the daughters. Since remainders in fee are given, the daughters could take only for life. The use of the word *then* bespeaks the ending of life estates in the daughters.

The Williams and Pence children were living at the death of the testator. So they took, as a class, respectively, vested remainders in the parcels that should be allotted to their mothers. As to the Susan H. Matics parcel, however, the remainder was a contingent one, since she had no children at the death of the testator. The vesting of the remainder in the portion that should be allotted to her was contingent on her leaving issue. This remainder failed at the termination of her life estate, because she died childless. As to the parcel of the land which she took for life under the will, a remainderman never came into being. When her life estate ended, there was no one to take as the will devised. The will contained no residuary clause. The statute says that, in such event, the estate as to which the remainder fails shall go to the heirs-at-law of the testator. "Unless

a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be void, or otherwise incapable of taking effect, shall be included in the residuary devise (if any) contained in such will; and if there be no residuary devise therein, such real estate or interest shall go to the heirs-at-law of the testator, as if he had died intestate." Code 1906, ch. 77, sec. 13. Since the contingent remainder relating to the estate for life to Susan H. Matics failed, that estate went to the heirs-at-law of the testator. During all her life there was possibility of issue. *Carney* v. *Kain,* 40 W. Va. 758. The remainder, contingent upon her producing issue, did not fail until she died childless. When it did fail the estate to which it pertained became property as to which the testator was intestate. Until the failure of the contingency, the testator was testate as to that property. He did not die intestate as to it. He devised it by his will. That devise happened to fail after his death. The presumption against intestacy does not apply in this particular, nor argue against the construction which we have given the will.

Now, the heirs-at-law of Andrew D. Crosier, to whom the Susan H. Matics parcel descended when the contingent remainder in relation to it failed, were the Williams and Pence children—his grandchildren. Both of the other daughters died before the failure of this remainder. Their children were then the only heirs-at-law of Andrew D. Crosier. The land as to which the remainder failed descended to them. They were entitled to take per capita. "Whenever those entitled to partition are all in the same degree of kindred to the intestate, they shall take per capita or by person." Code 1906, ch. 78, sec. 3. The Williams children were four in number—they were entitled to four-sevenths of the Susan H. Matics land. The Pence children were three in numbed—they were entitled to three-sevenths of that land. So the proportions of interest which the court below fixed are right.

The court, however, erred in holding that Epling acquired the interest of the Williams children because of their joining in the partition deed to Susan H. Matics. That deed could give her no more than she was entitled to under the will, an allotment of land for life. The partition, though erroneously viewed by the parties, had no further effect than that which the will justified.

Its effect was simply to set off, as the will directed, the land in three parcels for the separate enjoyment of life estates by the daughters, and the vesting of remainders in their children. That which was set off to Susan H. Matics could be so set off to her only for life—the will gave no other estate to her. The deed of the Williams children in partition simply defined what she was to enjoy for life and what was to go in remainder to her children if any she had. That deed must be considered as intended to do only what it could do in view of the provisions of the will. It could transfer nothing in fee, for in the portion of the land allotted to the Williams children by this same partition they retained all the fee title that had been vested in them as remaindermen to the life estate of their mother. Our holding in *Shaffer* v. *Shaffer,* 69 W. Va. 163, is here directly in point: "A deed between tenants in common, cotenants or coparceners, by which in an effort at partition, they each convey or quitclaim to the others, the portions allotted to them respectively, conveys no title to the grantee; it amounts simply to a severance of the unity of possession."

Nor does the partition deed estop the Williams children from claiming as heirs-at-law an interest in the Susan H. Matics parcel. Their interest in that land came to them by descent long after they made the partition deed. As we have shown, the deed was not one of conveyance, but one of partition. It did not convey land, but severed the unity of possession in land. Still, if considered a deed of conveyance, it is not of such character as to estop the grantors from claiming title thereafter acquired in the same land. It purports to convey only such right, title and interest as grantors have. It contains only covenants of special warranty. The title to the Matics land at the date of this deed was in a third party because of no act or default of the covenantors. Under such circumstances the after-acquired title does not vest in the covenantee, and the covenantors are not estopped to assert claims thereto. *Western Mining, etc., Co.* v. *Peytona Cannel Coal Co.,* 8 W. Va. 406.

The cross assignment of error submitted on behalf of the children of Paulina Williams is well taken and must be sustained. The order of the court below will be reversed and set aside. An order will be entered here directing the payment of four-sevenths

of the money to the Williams children and the payment of three-sevenths thereof to the Pence children, as heirs-at-law of Andrew D. Crosier, deceased.

*Cross-Assignments Sustained and Order Reversed.*